IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PRESTWICK CAPITAL MANAGEMENT LTD., PRESTWICK CAPITAL MANAGEMENT 2 LTD., and PRESTWICK CAPITAL MANAGEMENT 3 LTD., | ) ) ) ) ) | |
| Plaintifs, | ) ) | No. 10 C 23 |
| v. | ) ) ) | |
| PEREGRINE FINANCIAL GROUP, INC., ACUVEST INC., JOHN LOUIS CAIAZZO, and PHILIP FRANCIS GREY, | ) ) ) | |
| Defendants. | | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Prestwick Capital Management Ltd., Prestwick Capital Management 2 Ltd., and Prestwick Capital Management 3 Ltd. (collectively, "Prestwick"), sued defendants Peregrine Financial Group, Inc. ("PFG"); Acuvest Inc.; Acuvest's President, John Caiazzo; and one of Acuvest's Vice Presidents, Philip Grey ("Grey"). The complaint alleges that the defendants are liable for commodities fraud under various sections of the Commodity Exchange Act ("CEA"), 7 U.S.C. § 1, *et seq*. In addition, Prestwick asserts a common law breach of fiduciary duty claim against Acuvest, Caiazzo, and Grey.[1]  The defendants have filed three separate motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) -- one motion has been filed by Acuvest and Caiazzo, one by Grey, and one

---

[1] Unless otherwise indicated, "Acuvest" refers collectively to Acuvest Inc., Caiazzo, and Grey.

by PFG.  For the reasons discussed below, the motions are denied.

I.

During the years 2005 and 2006, Prestwick invested approximately $7 million in a limited partnership and commodity pool called Maxie Partners L.P. ("the pool").  The pool was created by Howard Winell ("Winell") and was operated by Winell's corporation, Winell Associates, Inc.[2]  Prestwick was originally introduced to Winell by Acuvest.  In addition to acting as an introducing broker, the complaint alleges that Acuvest provided Prestwick with advice regarding its investment in Maxie Partners L.P.

In April 2007, Prestwick told Grey at Acuvest that it wanted to redeem its investment in the pool.  Grey told Prestwick that its investment would be valued by an accountant in the second week of June 2007 and that the funds would be wired between June 10 and June 15, 2007.  Prestwick alleges that it had also been told that its redemption would be effective as of June 30, 2007.  As a result, Prestwick says that it assumed that Grey had likely meant to say that its funds would be wired by July 15, 2007.  The complaint alleges that Prestwick's funds (or some portion thereof)

---

[2] Prestwick refers to Maxie Partners L.P., Maxie Partners G.P., LLC, Winell Associates, Inc., and Howard Winell as the "Maxie Partners Entities."  Compl. ¶ 11.  Prestwick filed suit against the Maxie Partners Entities in New York State court.  The instant action was originally filed in the Southern District of New York but was transferred on the defendants' motion.

were removed from the pool and that about $3 million was returned to Prestwick.

However, in August 2007, Winell told Prestwick that, due to severe market conditions, the remaining amount of the investment was not presently available. Prestwick alleges that during the month of July 2007, Winell and Acuvest engaged in frequent trading that caused the pool to incur substantial losses, and that Prestwick's funds consequently were redeposited in the pool to cover margin calls. Although Winell told Prestwick that the remaining funds would become available over the next several weeks, the money has not been forthcoming. Although the exact amount outstanding is not known, Prestwick alleges, based on representations by Winell and Acuvest, that it is owed at least $4 million.

## II.

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint, not its merits. *See, e.g.*, *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In resolving a Rule 12(b)(6) motion, all well-pleaded allegations in the complaint are taken as true, and all reasonable inferences are drawn in favor of the nonmoving party. *See, e.g.*, *McMillan v. Collection Prof'ls, Inc.*, 455 F.3d 754, 758 (7th Cir. 2006).

### Count I

In Count I of its complaint, Prestwick asserts that the

defendants[3] are liable for commodities fraud under three separate provisions of the CEA: (1) section 4o, which prohibits fraud committed by Commodity Trading Advisors (CTAs);[4] (2) section 4b, the CEA's general anti-fraud provision; and (3) section 22(a), which prohibits aiding and abetting commodities fraud committed by others. The defendants argue that none of these claims has been pleaded properly.

Section 4o of the CEA "makes it unlawful 'for any commodity trading advisor or commodity pool operator . . . (A) to employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant; or (B) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant.'" *Stotler and Co. v. Commodity Futures Trading Com'n*, 855 F.2d 1288, 1291 (7th Cir. 1988) (quoting 7 U.S.C. § 6o (1976)). Acuvest argues that Prestwick's section 4o

---

[3] Although the complaint indicates that Count I is asserted against "all defendants," it is not based on any specific conduct by PFG. Rather, the complaint purports to base PFG's liability on its alleged guarantee agreement with Acuvest, Compl. ¶ 42, a claim that is fleshed-out in Count III. Thus, references to the "defendants" for purposes of Count I are not intended to include PFG.

[4] In addition to commodity trading advisors, section 4o also applies to any "associated person of a commodity trading advisor, commodity pool operator, or associated person of a commodity pool operator." 7 U.S.C. § 6o (1). Since the parties' arguments focus on whether Acuvest can be regarded as a CTA, I do not discuss Prestwick's section 4o claim insofar as these other positions are concerned.

claim fails because, by its plain terms, the provision applies only to commodity trading advisors. Acuvest claims that it is not a CTA and that it is therefore not subject to section 4o.

This argument simply ignores the complaint's allegations. Prestwick specifically asserts that Acuvest is a CTA. Compl. ¶¶ 4, 16. The complaint also alleges that Caiazzo and Grey individually are CTAs. Compl. ¶¶ 5, 6. Acuvest insists that the latter allegations are untrue -- it claims, for example, that it is not registered with the National Futures Association ("NFA") as a CTA. But as Acuvest itself later seems to acknowledge, formal registration is not determinative of whether a party may be deemed a CTA under the CEA. *See, e.g.*, *United States v. Ramunno*, 289 Fed. App'x. 359, 361 (11th Cir. 2008); *Commodity Futures Trading Commission v. Savage*, 611 F.2d 270, 282 (9th Cir. 1979). Rather, a party may be deemed a CTA where the party has acted as a CTA. *See, e.g., In the Steven Matrix*, CFTC No. 04-01, 2003 WL 22251452, at *3 (CFTC Oct. 2, 2003); *see also Ghouth v. Conticommodity Services, Inc.*, 642 F. Supp. 1325, 1330 (N.D. Ill. 1986) (abrogated on other grounds). This is precisely what the complaint alleges of Acuvest. *See* Compl. ¶¶ 4, 7, 16, 17, 44. It is true that Acuvest denies ever having provided Prestwick with such advice. At this stage of the litigation, however, I am bound to accept the complaint's allegations as true.

Acuvest also argues that the complaint's allegations regarding

its advice to Prestwick lack sufficient detail. For example, Acuvest argues that Prestwick fails to specify the advice that it received from Acuvest; it also claims that Prestwick has not alleged that Acuvest offered its advice "for compensation or profit," which is part of the definition of "commodity trade advisor" under the CEA. *See* 7 U.S.C. § 1a(6)(A)(I).

Prestwick's complaint is adequate without such factual enhancement. To be sure, claims asserted under section 4o are subject to Rule 9(b)'s heightened pleading requirements; but these requirements should not be overstated. "Although Rule 9(b)'s special pleading standard is undoubtedly more demanding than the liberal notice pleading standard which governs most cases, Rule 9(b)'s special requirements should not be read as a mere formalism, decoupled from the general rule that a pleading must only be so detailed as is necessary to provide a defendant with sufficient notice to defend against the pleading's claims." *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 503 (6th Cir. 2008). "Rule 9(b) should be applied with an eye towards its 'three main purposes: (1) protecting a defendant's reputation from harm; (2) minimizing strike suits and fishing expeditions; and (3) providing notice of the claim to the adverse party.'" *Bone Care Intern., LLC v. Pentech Pharmaceuticals, Inc.*, No. 08-CV-1083, 2010 WL 1655455, at *6 (N.D. Ill. Apr. 23, 2010) (quoting *Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771, 777 (7th Cir. 1994)).

Prestwick's complaint meets this standard. It alleges what the fraudulent activity consisted of (unauthorized trading); who was involved in the fraudulent activity (Acuvest Inc., Grey, and Caiazzo, along with Winell and the Maxie Partners Entities); and when the fraudulent activity took place (after June 30, 2007, when the redemption was to become effective). The complaint also provides sufficient detail concerning the circumstances surrounding the fraudulent activity. For example, Prestwick alleges that its funds were originally withdrawn from the pool in accordance with its redemption request and that a portion of the funds was redeposited when it became necessary to cover later trading losses. This degree of detail is sufficient to put Acuvest on notice of Prestwick's claim and to give assurance that the suit is not a mere fishing expedition.

Acuvest's final objection to Prestwick's section 4o claim is that the complaint fails to allege scienter. As Acuvest acknowledges, however, not all claims under section 4o require a plaintiff to prove scienter. Section 4o encompasses two subsections: 4o(1)(A), which makes it illegal for a CTA "to employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant"; and 4o(1)(B), which makes it unlawful for a CTA "to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or

-7-

participant."

Courts have held that scienter is required for claims under the former provision but not under the latter. *See, e.g., Commodity Trend Service, Inc. v. Commodity Futures Trading Com'n*, 233 F.3d 981, 993 (7th Cir. 2000) (noting that because it applies to "any transaction, practice, or course of business which operates as a fraud or deceit," section 4o(1)(B) "focuses upon the effect a CTA's conduct has on its investing customers rather the CTA's culpability, and so does not require a showing of scienter"); *see also Messer v. E.F. Hutton & Co.*, 847 F.2d 673, 677 (11th Cir. 1988). Instead, the Seventh Circuit has held that claims under section 4o(1)(B) only require a showing of negligence. *Commodity Trend Service*, 233 F.3d at 994. The issue is ultimately academic, however, because Prestwick has adequately pleaded scienter. *See, e.g.*, Compl. ¶ 1 (alleging that "with the full knowledge and assistance and insistence of Acuvest and its employees Grey and Caiazzo, rather than returning the full redemption amount to plaintiffs, the pool operator reinvested $4,000,000 of Plaintiffs' funds back into the pool trading account to cover margin calls that had arisen from trading after Plaintiffs' redemption date"). For these reasons, Count I asserts a claim for fraud under CEA section 4o.

The defendants' arguments against Prestwick's section 4b claim are similarly unpersuasive. Section 4b "makes it unlawful for any

person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery made ... for or on behalf of any other person . . . (A) to cheat or defraud or attempt to cheat or defraud such other person . . . . " *Stotler*, 855 F.2d at 1291. Acuvest initially contends that Prestwick has failed to identify any fraudulent misrepresentations made by the defendants. However, section 4b claims do not necessarily involve misrepresentations; section 4b can be violated simply by virtue of a defendant's knowing unauthorized trading. *See, e.g.*, *Anspacher & Associates, Inc. v. Henderson*, 854 F.2d 941, 945 (7th Cir. 1988) ("[F]ailure to liquidate Henderson's positions upon his request constitutes unauthorized trading and thus statutory commodities fraud. By knowingly failing to follow Henderson's instructions to close out his account, Jensen violated § 4b of the Act.") (citing *Cange v. Stotler and Company*, 826 F.2d 581, 589 (7th Cir. 1987)); *Moll v. Heingold Commodities, Inc.*, No. 86 C 10249, 1989 WL 58205, at *3 (N.D. Ill. May 31, 1989).

Acuvest argues that the complaint contains no allegations of fact that Acuvest or Caiazzo ever engaged in any trading. However, the complaint indicates otherwise. *See* Compl. ¶ 25 ("During the month of July, 2007, Howard Winell and Acuvest then engaged in frequent and large trading in the pool account which caused a substantial loss to the pool."); *see also* Compl. ¶ 36 ("The Maxie Partners Entities and the Acuvest Defendants worked together to

make investment decisions and execute trades on behalf of Maxie Partners L.P."); ("During the month of July, 2007, Howard Winell and Acuvest then engaged in frequent and large trading in the pool account which caused a substantial loss to the pool."). Acuvest calls these allegations "preposterous" and insists that "[n]either Acuvest nor Caiazzo had any authorization to do any trading – it was simply not their role with regard to the pool account." Acuvest Mem. at 8-9. But here again Acuvest ventures prematurely into questions concerning the merits of Prestwick's claims. The only question at issue at this stage is whether Prestwick's complaint states a claim under Rules 12(b)(6) and 9(b). I conclude that it does.

Finally, Prestwick alleges that Acuvest is liable for aiding and abetting commodities fraud under CEA section 22(a). To make out a claim under section 22(a), a plaintiff must allege that the defendant "(1) had knowledge of the principal's . . . intent to commit a violation of the Act; (2) had the intent to further that violation; and (3) committed some act in furtherance of the principal's objective." *Damato v. Hermanson*, 153 F.3d 464, 473 (7th Cir. 1998).

Acuvest's contentions in opposition to plaintiffs' aiding and abetting theory are either inaccurate or based on a misapprehension of Rule 9(b)'s requirements. For example, Acuvest claims that the complaint "does not allege any facts that Acuvest or Caiazzo had

any knowledge that Maxie Partners intended to commit commodities fraud under the CEA." That is incorrect. *See, e.g.*, Compl. ¶ 32 ("Through its employee Grey, Acuvest was fully aware that the redeposit of the $3,940,000 of redemption moneys back into the PFG account was a violation of the Maxie Partners pool limited partnership agreement, the pool disclosure documents, the prohibitions of Section 4o the CEA, 7 U.S.C. § 6o, against commodity pool fraud and the prohibitions of Section 4b the CEA, 7 U.S.C. § 6b, against commodities fraud.").

Acuvest also complains that plaintiffs do not allege that "Acuvest or Caiazzo had the intent to further Maxie Partners Entities' purported CEA violation," and that it does "not state any fact as to any act that tehse [sic] defendants committed in furtherance of the Maxie Partners Entities' objective." Br. at 14. But while Rule 9(b) requires the circumstances surrounding fraud to be alleged with particularity, it provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Moreover, Rule 9(b) does not require plaintiffs to plead facts to support each element of their claims. *See, e.g.*, *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 508 (7th Cir. 2007); *Sobilo v. Seleman*, No. 06 C 0461, 2006 WL 1762353, at *3 (N.D. Ill. June 27, 2006).

Many of the arguments discussed above are presented in Grey's separately-filed motion to dismiss. Only two of Grey's claims

warrant separate consideration. First, Grey contends that the complaint fails to allege any basis for holding him individually liable for any of the illegal conduct at issue in the case. He claims that the complaint alleges no personal wrongdoing by him and argues that he cannot be held liable simply by virtue of his role as an officer of Acuvest. Secondly, Grey argues that he cannot be held liable under section 4o because "nowhere does the Amended Complaint allege that Grey is a CTA or CPO."

Neither of these claims is accurate. Prestwick clearly asserts personal wrongdoing by Grey. *See, e.g.*, Compl. ¶ 1 ("[I]n July 2007, with the full knowledge and assistance and insistence of Acuvest and its employees Grey and Caiazzo, rather than rather than returning the full redemption amount to plaintiffs, the pool operator reinvested $4,000,000 of Plaintiffs' funds back into the pool trading account to cover margin calls that had arisen from trading after Plaintiffs' redemption date and actual redemption of Plaintiffs' investments."). In addition, the complaint alleges that Grey was a CTA. *See, e.g.*, Compl ¶ 6. ("Upon information and belief, Defendant Philip Francis Grey . . . is registered with the NFA as 'NFA Member Approved,' 'Commodity Trading Advisor Registered,' 'Commodity Pool Operator Registered.'"). For these reasons, I deny the defendants' motions to dismiss Count I of the complaint.

**Count II**

In Count II, Prestwick asserts a claim for breach of fiduciary duty against Acuvest. The complaint alleges that, as an introducing broker and advisor to Prestwick, Acuvest owed Prestwick a fiduciary duty. According to the complaint, Acuvest breached its duty when, along with the Maxie Partners Entities, it engaged in unauthorized trading with Prestwick's funds. Acuvest's objections to these allegations have already been discussed above and require no further discussion here. Acuvest also responds by claiming that merely being an advisor is not sufficient to give rise to a fiduciary duty. Such a duty arises, Acuvest maintains, only when the advisor is vested with discretionary authority over the investor's account. Since the complaint does not allege that Acuvest possessed such authority over Prestwick's account, Acuvest argues that Count II fails.

This argument is not adequately developed. It consists of only three sentences in Acuvest's opening brief and the lone case cited in support of the argument, *Commodity Trend Service, Inc. v. Commodity Futures Trading Com'n*, 233 F.3d 981, 990 (7th Cir. 2000), is inapposite. Moreover, while the complaint does not specifically allege that Acuvest was "vested with discretionary authority" over the pool, it does allege that Acuvest exercised functional or de facto control over the pool. In short, Acuvest fails to advance a persuasive argument for dismissal of Prestwick's breach of fiduciary duty claim.

It should also be noted that, in addition to asserting that Acuvest is directly liable for breach of fiduciary duty, Prestwick alleges that Acuvest can be held liable for aiding and abetting the Maxie Partners Entities' breach of fiduciary duty. "To be liable for aiding and abetting a breach of fiduciary duty under Illinois law: (1) the party whom the defendant aids must perform a wrongful act which causes an injury; (2) the defendant must be regularly aware of his role as part of the overall or tortious activity at the time that he provides the assistance; and (3) the defendant must knowingly and substantially assist the principal violation." *Timothy & Thomas LLC v. Viral Genetics, Inc.*, No. 06 C 1813, 2010 WL 3155972, at *22 (N.D. Ill. Aug. 10, 2010).

Acuvest argues that Prestwick's aiding-and-abetting claim fails because the complaint lacks sufficient factual allegations. For example, Acuvest argues that the complaint does not allege facts "as to how . . . Acuvest and Caiazzo 'substantially assisted' the Maxie Partners' purported breach of fiduciary duties." Acuvest also claims that the complaint lacks "any facts indicating that Acuvest had any role in the investment decisions made by the Maxie Funds pool operator or its actual CTA," and fails to allege facts relating to their knowledge that the $3.9 million deposit constituted a "re-deposit" of money belonging to plaintiffs.

Acuvest's demands for additional factual elaboration were unpersuasive with respect to Count I of Prestwick's complaint. The

demands are even less convincing when directed against Count II, which, unlike Count I, is not claimed by Acuvest to be subject to heightened pleading requirements. Prestwick is required to provide only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The complaint complies with this standard.

Finally, Acuvest briefly argues that Count II is untimely. Acuvest points out that, according to the complaint, Prestwick was told by Grey that it would receive its funds by June 15, 2007. When Prestwick did not receive its funds, Acuvest maintains, Prestwick had constructive knowledge of the alleged misconduct and the statute of limitations began to run. Thus, when Prestwick filed suit on June 30, 2009, more than two years had elapsed.

As noted above, however, Prestwick claims that, in addition to being told by Grey that it would receive its funds by June 15, 2007, it was also told that its redemption request would be considered effective as of June 30, 2007. Under the circumstances, it was reasonable for Prestwick to believe that Grey had misspoken in giving the June 15, 2007 date and that he instead intended to convey that Prestwick would receive its funds by July 15, 2007. Thus, June 30, 2007 is the earliest possible point at which

Prestwick might have known that something was amiss. (This is of course not to say that Prestwick did in fact have notice at that time). Since the complaint was filed on June 30, 2009, the suit is timely. For these reasons, the defendants' motion to dismiss Count II is denied.

## Count III

Count III of the complaint alleges that PFG is jointly and severally liable for damages resulting from Acuvest's violations of the CEA. Prestwick contends that PFG specifically accepted liability for Acuvest's CEA violations by virtue of a 2005 guarantee agreement that Acuvest signed with PFG.

PFG argues that Count III should be dismissed because the agreement on which Prestwick relies was not effective at the time Acuvest's fraud is alleged to have taken place. According to PFG, it signed three distinct agreements with Acuvest from 2005 to the present. Prestwick's claim relies on the first of these, which was executed by the parties in February 2005. However, PFG claims that the 2005 agreement was superseded in August 2006, when Acuvest entered into an independent introducing broker agreement with PFG. Under the 2006 agreement, Acuvest was required to cover its own liabilities. The latter agreement was in place from August 21, 2006 through July 3, 2008, at which time the parties entered into a new guarantee agreement that once again made PFG jointly and severally liable for Acuvest's fraudulent activity. PFG points out

that during the time of Acuvest's alleged fraudulent conduct -- from June 2007 through August 2007 -- no guarantee agreement was in place.

The parties argue at length over whether, since the documents were attached to PFG's motion to dismiss but not to Prestwick's complaint, I may properly consider the 2006 and 2008 agreements in ruling on the instant motion. The Seventh Circuit has held that "a court may consider documents that a defendant attaches to a motion to dismiss . . . if they are referred to in the plaintiffs complaint, are central to her claim, and are 'concededly authentic.'" *Schilke v. Wachovia Mortg., FSB*, 705 F. Supp. 2d 932, 935 n.1 (N.D. Ill. 2010) (citing *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002))(brackets and citations omitted). Here, while Prestwick does not object to the 2005 guarantee agreement, it has contested the authenticity of the 2006 and 2008 agreements. PFG has failed to submit an affidavit or any other evidence attesting to the documents' authenticity. Prestwick has also raised colorable concerns about whether the 2006 agreement in fact legally superseded the original 2005 guarantee agreement. Consequently, for purposes of deciding the present motion, I do not rely on the agreements that PFG has cited.

This does not entirely dispose of PFG's motion, however, for PFG asserts two fallback arguments. First, it claims that the conduct alleged of Acuvest in the complaint was never covered by

any guarantee agreement between the parties, so that even assuming the 2005 agreement was in effect at the time of the events in question, Prestwick still would have no basis for holding PFG jointly and severally liable.  According to PFG, the guarantee agreements make PFG jointly and severally liable only for conduct performed within the scope of Acuvest's office as an introducing broker.  PFG claims that an introducing broker's job is essentially limited to soliciting and accepting orders for the purchase and sale of commodity futures, and are not involved in "the internal affairs of the commodity pools themselves, or the conduct of internal pool business by the pool operator."  Peregrine Mem. at 13.  Since the complaint seeks to hold Acuvest liable for conduct involving the pool's internal affairs, PFG argues that the guarantee agreement is irrelevant.

Prestwick responds by arguing that Acuvest's alleged conduct is covered by the agreement.  Indeed, Prestwick points to PFG's own assertion that the scope of conduct covered under any guarantee agreement includes "claims with respect to improper conduct involving the solicitation and accepting of customers and orders, and/or engaging in transactions for customer accounts."  Prestwick Resp. to Peregrine at 11 (quoting Peregrine Mem. at 13).  Prestwick argues that it seeks to hold Acuvest liable for improper conduct involving transactions for customer accounts.  Based on the complaint's allegations and the arguments put forth in the parties'

briefs, I am unable to say as a matter of law that the conduct in question falls outside the bounds of the guarantee agreement.

PFG alternatively contends that the guarantee agreement does not apply to Prestwick's suit because Prestwick was a customer of the pool (Maxie Partners L.P.) and the pool's operator (the Maxie Partners Entities), not of Acuvest or PFG.  Under basic principles of partnership law, PFG argues, a limited partner in the pool such as Prestwick has a cause of action only against the general partner (Winell and other Maxie Partners Entities), not against Acuvest or PFG.  This argument is advanced too hastily; in the absence of more concerted advocacy, I am unconvinced.  *See, e.g., Berkowitz*, 927 F.2d at 1384 (perfunctory and undeveloped arguments are waived). Accordingly, PFG's motion to dismiss Count III is denied.

### III.

For the reasons discussed above, the defendants' motions to dismiss are denied.

ENTER ORDER:

_____
**Elaine E. Bucklo**
United States District Judge

Dated: November 12, 2010