## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

---

| | |
|---|---|
| **PRESTWICK CAPITAL MANAGEMENT LTD., PRESTWICK CAPITAL MANAGEMENT 2 LTD., and PRESTWICK CAPITAL MANAGEMENT 3 LTD.,** | x : : : : : : |
| Plaintiffs, | : CASE NO. 10 CV 23 |
| -against- | : : HON. ELAINE E. BUCKLO |
| **PEREGRINE FINANCIAL GROUP, INC., ACUVEST INC., JOHN LOUIS CAIAZZO, and PHILIP FRANCIS GREY,** | : **SECOND AMENDED** : **COMPLAINT** : : : |
| Defendants. | : : : |
| | x |

---

Plaintiffs Prestwick Capital Management Ltd., Prestwick Capital Management 2 Ltd., and Prestwick Capital Management 3 Ltd. (collectively, "Plaintiffs"), by their attorneys, Patton Boggs LLP and Gekas Law LLP, for their Second Amended Complaint against Defendants Acuvest Inc. ("Acuvest"), John Louis Caiazzo, and Philip Francis Grey (collectively, the "Acuvest Defendants"), Peregrine Financial Group, Inc. (hereinafter "PFG") (collectively, "Defendants"), allege as follows:

### PRELIMINARY STATEMENT

1.      In 2005-2006, Plaintiffs invested over $7,000,000 in Maxie Partners L.P., a registered commodity pool regulated under the Commodity Exchange Act ("CEA"), 7 U.S.C. §1, *et seq.*, and the regulations promulgated thereunder by the Commodity Futures Trading Commission ("CFTC"), 17 C.F.R. § 1, *et seq.*  Plaintiffs' investments were deposited into a pool

trading account held at defendant Peregrine Financial Group, Inc. ("PFG") a Futures Commission Merchant so registered under the CEA. The investments in that account and the handling of pool funds were directed and controlled in whole or in part by defendant Acuvest, Inc. ("Acuvest"), registered under the CEA as an Introducing Broker ("IB"). In or about May 2007, by notice to Acuvest and the pool operator of Maxie Partners L.P., Plaintiffs redeemed their investments in full in accordance with their rights under the limited partnership/commodity pool agreements. The pool operator assured Plaintiffs that their full investment would be returned shortly after the redemption date of June 30, 2007, and in fact withdrew Plaintiffs' funds from the pool's trading accounts for transfer to Plaintiffs. However, in July 2007, with the full knowledge and assistance and insistence of Acuvest and its employees Grey and Caiazzo, rather than rather than returning the full redemption amount to plaintiffs, the pool operator reinvested $4,000,000 of Plaintiffs' funds back into the pool trading account to cover margin calls that had arisen from trading after Plaintiffs' redemption date and actual redemption of Plaintiffs' investments. The pool operator thereby committed commodity pool fraud prohibited by 7 U.S.C. § 6o and commodities fraud prohibited by 7 U.S.C. § 6b. Defendants Acuvest, Grey and Caiazzo aided and abetted that fraud in violation of 7 U.S.C. § 25. Defendant PFG is liable for those violations by Acuvest because pursuant to a certain "Guarantee Agreement," PFG is vicariously liable for all Acuvest's obligations and violations of the CEA.

## THE PARTIES

2.     Plaintiffs are three investment companies organized and existing under the laws of Alberta, Canada, and located at 220 Parkmere Court, Chestermere, Alberta, Canada.

3.     Upon information and belief, Defendant PFG is a corporation organized and existing under the laws of the State of Iowa and has a principal place of business located at 198

South LaSalle Street, 7th Floor, Chicago, Illinois. Defendant PFG is registered as an active foreign business corporation doing business in New York with the New York Secretary of State. Defendant PFG is registered with the CFTC as an FCM, as defined in Section 1a (20), of the CEA, 7 U.S.C. § 1a(20).

4.      Upon information and belief, Defendant Acuvest is a corporation organized and existing under the laws of the State of Delaware, is registered as an active foreign business doing business in New York with the New York Department of State, and is located at 28581 Front St., Suite 100, Temecula, California. Defendant Acuvest is an Introducing Broker, as defined in Section 1a(23) of the CEA, 7 U.S.C. § 1a(23), and is registered with the CFTC as a Guaranteed Introducing Broker. Defendant Acuvest is also a Commodity Trading Advisor as defined by Section 1a(b)(A) of the CEA, 7 U.S.C. § 1a(b)(A), because it provided commodity trading advice in connection with a commodities pool that included Plaintiffs' funds.

5.      Upon information and belief, Defendant John Louis Caiazzo is a citizen and resident of the State of California, the President of Acuvest, and is registered with the NFA as "Associated Person Registered," "Principal Reviewed," and "NFA Associate Member." Caiazzo is also a Commodity Trading Advisor as defined by Section 1a(b)(A) of the CEA, 7 U.S.C. § 1a(b)(A).

6.      Upon information and belief, Defendant Philip Francis Grey is a citizen and resident of the State of California, is Vice President of Institutional Sales and a principal of Acuvest, and is registered with the NFA as "NFA Member Approved," "Commodity Trading Advisor Registered," "Commodity Pool Operator Registered," and "Principal Approved."

## OTHER PARTIES

7.     Upon information and belief, Maxie Partners L.P. is a limited partnership organized and existing under the laws of the State of New York and is located at the offices of Winell Associates, Inc. at 500 Park Avenue, New York, New York.  Maxie Partners L.P. is a Commodity Trading Advisor as defined in Section 1a(6) of the CEA, 7 U.S.C. § 1a(6), and claims an exemption under Rule 4.7 of the Commodity Exchange Act, 17 C.F.R. § 4.7.  Maxie Partners L.P. is an NFA-registered Exempt Commodity Trading Advisor (under the name Maxie Fund LP) that provides investment advice to funds in its portfolio through an agreement with Winell Associates, Inc.

8.     Upon information and belief, Maxie Partners G.P., LLC is a limited liability company organized and existing under the laws of the State of New York, is the general partner of Maxie Partners L.P., is managed by member Howard Winell, and is located at the offices of Winell Associates, Inc. at 500 Park Avenue, New York, New York.

9.     Upon information and belief, Winell Associates, Inc. is a corporation organized and existing under the laws of the State of New York and is located at 500 Park Avenue, New York, New York.  Winell Associates, Inc. is a Commodity Pool Operator, as defined under Section 1a(5) of the Commodities Exchange Act, 7 U.S.C. § 1a(5), and is affiliated with Maxie Partners L.P. through an Exempt Commodity Pool Operator arrangement, whereby it serves as the designated investment manager for Maxie Partners L.P.'s entire portfolio.

10.     Howard Winell is the President of Winell Associates, Inc.

11.     Maxie Partners L.P., Maxie Partners G.P., LLC, Winell Associates, Inc. and Howard Winell are collectively referred to herein as the "Maxie Partners Entities."  An action

4

has previously been commenced against the Maxie Partner Entities in New York State Supreme Court.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction pursuant to § 22(c) of the Commodities Exchange Act, 7 U.S.C. § 25(c), 28 U.S.C. § 1331 and 28 U.S.C. § 1367(c).

13.     This Court has personal jurisdiction over all Defendants inasmuch as they do business regularly and systematically in Illinois and the tortuous conduct occurred in whole or part in Illinois.  The Defendants all requested transfer of this action to this district from the Southern District of New York.

14.     Venue is proper in the Northern District of Illinois pursuant to § 22(c) of the Commodities Exchange Act, 7 U.S.C. § 25(c) because the conduct at issue occurred in substantial part in the Northern District of Illinois.  Defendants obtained the transfer of this action to this Court from the Southern District of New York upon their arguments that venue was proper in the Northern District of Illinois.

## FACTUAL ALLEGATIONS

15.     In 2005 and 2006, Plaintiffs invested a total of approximately $7,000,000 with Maxie Partners L.P. by way of making capital contributions totaling that amount and becoming limited partners in Maxie Partners L.P.

16.     The Acuvest Defendants began their relationship with Plaintiffs by advising them on commodities investments in connection with Plaintiffs' own account at PFG.  Later, the Acuvest Defendants introduced Plaintiffs to Howard Winell who had formed the commodity pool called Maxie Partners L.P.  Plaintiffs continued to directly rely on Acuvest's advice with respect to Plaintiffs' investment in the Maxie Partners commodity pool.

17.     Acuvest therefore acted as the introducing broker for all of Maxie Partners L.P.'s accounts.  Acuvest not only acted as an introducing broker, but also, upon information and belief, each of the Acuvest Defendants provided the Maxie Partners Entities with investment advice, and vital market information, such as quotes for the subject securities.  For example, the Maxie Partners Entities did not even have computerized access to commodities market information and relied entirely on Acuvest to obtain and consider relevant market information. Additionally, the Acuvest Defendants communicated directly with the Plaintiffs regarding their account, were responsible for the management and investment decisions of the Maxie Partners L.P. fund, and created the impression that they were partners of Howard Winell.

18.     Defendant PFG was the clearing broker for the Maxie Partners L.P. fund. Defendant PFG's responsibilities as a clearing broker for Acuvest extended beyond routine clearing functions.  Defendants PFG and Acuvest entered into a Guarantee Agreement whereby Defendant PFG provided all capital requirements for Acuvest and agreed to be held jointly and severally liable for all obligations of Acuvest.

19.     On information and belief, pursuant to CFTC Regulations 1.3(nn) & 1.17(a)(2)(ii), 17 C.F.R. §§ 1.3(nn) & 1.17(a)(2)(ii), there exists a certain "Guarantee Agreement" between PFG and Acuvest by which PFG "guarantee[d] performance by [Acuvest] the introducing broker of, and … be jointly and severally liable for, all obligations of [Acuvest] the introducing broker under the Commodity Exchange Act … with respect to the solicitation of and transactions involving all commodity customer … accounts of the introducing broker entered into on or after the effective date of [the] agreement."

20.     Upon information and belief, as of the end of 2006, the Maxie Partners Entities represented that Maxie Partners L.P. had 26 investors, including the three Plaintiffs herein, cash

totaling over $20,160,214, and an unrealized trading loss of $724,000. The Maxie Partners Entities also reported that the limited partners' capital accounts, including Plaintiffs', had capital balances totaling $18,654,550. In other words, the limited partners were told that their collective partnership interests exceeded their capital accounts.

21.     In April 2007, Plaintiffs informed Defendant Grey at Acuvest that they wished to redeem their investments. Plaintiffs were informed that their redemption would not be effective until the end of the second quarter of 2007, *i.e.*, June 30, 2007. Plaintiffs gave the required notice to the Maxie Partner Entities and Acuvest of their intention to withdraw as limited partners and redeem their investments as of June 30, 2007. As of the end of June 2007, Plaintiffs were informed that Maxie Partners L.P. still had assets of approximately $20 million.

22.     Plaintiffs delivered the redemption notice to defendant Acuvest and Grey on May 24, 2007, and defendant Grey forwarded the redemption request to Howard Winell at Maxie Partners the same day. Therefore, Acuvest had actual notice of Plaintiffs' redemption.

23.     Plaintiffs' notice of withdrawal was acknowledged by Howard Winell on May 31, 2007 and known by the Acuvest Defendants. Plaintiffs were told by defendant Grey at Acuvest that their limited partnership interests (hereinafter, the "capital accounts") would be valued by an accountant in the second week of June, 2007 and Plaintiffs' funds would be wired to them between June 10-15, 2007. (It is assumed that that meant the second week of July and July 10-15, 2007 based on the June 30, 2007 redemption date reflected in prior and subsequent correspondence.)

24.     On information and belief, on or about July 16, 2007, Acuvest transferred $2,340,000 from the pool trading account held at PFG to the pool bank account at JP Morgan Chase Bank.

25.     During the month of July, 2007, Howard Winell and Acuvest then engaged in frequent and large trading in the pool account which caused a substantial loss to the pool, losses in which, as a matter of law, Plaintiffs should not share because their investment had been redeemed in full as of the end of June 2007.  That losing trading generated large margin calls which reduced the cash balance of the pool trading account at PFG.

26.     On information and belief, defendants Grey and Caiazzo, acting for Acuvest, were engaged in and fully aware of that trading, those losses and those margin calls.  Moreover, on information and belief, throughout July 2007 defendants Grey and Caiazzo, acting for Acuvest, and PFG, made repeated margin call demands on the pool operator Howard Winell and insisted that Winell and the pool meet and pay those margin demands.

27.     On information and belief, there was a Guaranteed Introducing Broker Agreement between PFG and Acuvest pursuant to which Acuvest agreed to be liable in whole or in part for any deficits incurred in Maxie Partners' pool trading account at PFG, so that the financial risk to Acuvest and Grey was substantially increased because of those losses and unpaid margin calls.

28.     Notwithstanding Plaintiffs' notice and the Maxie Partners Entities' and Acuvest Defendants' assurances that Plaintiffs' capital accounts of over $7 million would be wired to Plaintiffs in June or July 2007 pursuant to the LP Agreement, Defendants made only two payments to Plaintiffs totaling $3 million at the beginning of August 2007 and another $200,000 payment in or about October 2007.  The exact value of Plaintiffs' capital accounts as of June 30, 2007 is not presently known, but is believed to be well over $7 million with the appreciation that had previously been reported to Plaintiffs.

29.     On or about July 30, 2007, but unbeknownst to Plaintiffs, the Maxie Partners Entities redeposited $3,940,000 of the redeemed funds back into Maxie Partners L.P.'s trading accounts at PFG for the purpose of meeting margins calls.

30.     The redeposit of the $3,940,000 of redemption moneys back into the PFG account was a violation of the Maxie Partners pool limited partnership agreement, the pool disclosure documents, the prohibitions of Section 4o the CEA, 7 U.S.C. § 6o, against commodity pool fraud, and the prohibitions of Section 4b the CEA, 7 U.S.C. § 6b, against commodities fraud.

31.     On information and belief, the redeposit of those redeemed pool investments were done with the full knowledge of defendant Grey, acting for defendant Acuvest, that Plaintiffs' redeemed funds should not have be redeposited into the PFG trading accounts for any purpose, let alone payment of margin calls or trading.

32.      Through its employee Grey, Acuvest was fully aware that the redeposit of the $3,940,000 of redemption moneys back into the PFG account was a violation of the Maxie Partners pool limited partnership agreement, the pool disclosure documents, the prohibitions of Section 4o the CEA, 7 U.S.C. § 6o, against commodity pool fraud and the prohibitions of Section 4b the CEA, 7 U.S.C. § 6b, against commodities fraud.  Acuvest thereby aided and abetted commodity pool fraud and is liable therefore under the CEA's private right of action provided by Section 22 of the CEA, 7 U.S.C. § 25.

33.     As the guarantor of Acuvest's obligations and liabilities under the CEA pursuant to the Guarantee Agreement described above in Paragraph 19, PFG is jointly and severally liable for Acuvest's aiding and abetting of the pool operators' commodity pool fraud.

34.     On August 7, 2007, Howard Winell informed Plaintiffs that "[t]he balance due [at least $4 million] is not readily available.  Due to severe market conditions of the last 2 weeks,

9

those funds were frozen but I believe they will become available over the next several weeks."

No explanation has ever been provided as to what became of the $4 million of Plaintiffs' funds

which were to be transferred to Plaintiffs in June or July 2007, or why those funds could have

been subject to "severe market conditions" in late July 2007 when the redemption was to be

effective June 30, 2007.  In addition, after Howard Winell informed Plaintiffs on August 7, 2007

that their funds had been "frozen" due to "severe market conditions," the Maxie Partners Entities

purportedly received another $500,000 of Plaintiffs' funds from an account controlled by the

Maxie Partners Entities and Acuvest Defendants, yet they failed to remit even that amount to

Plaintiffs.

## FIRST CAUSE OF ACTION
(Commodities Pool Fraud in Violation of Sections 22(a) and 4o of the Commodities Exchange
Act, Commodities Fraud in Violation of Sections 22(a) and 4b of the Commodities Exchange
Act  and Rules § 166.3 and § 166.2 Promulgated Thereunder – All Defendants)
(7 U.S.C. § 25(a), 7 U.S.C. § 6o, 7 U.S.C. § 6b, 17 C.F.R. § 166.2, 17 C.F.R. § 166.3)

35.     Paragraphs 1 to 34 of the Complaint are incorporated as if stated fully herein.

36.     The Maxie Partners Entities and the Acuvest Defendants acted as Commodity

Trading Advisors, Commodity Pool Operators, or Associated Persons.  The Maxie Partners

Entities and the Acuvest Defendants worked together to make investment decisions and execute

trades on behalf of Maxie Partners L.P.

37.     The Maxie Partners Entities and the Acuvest Defendants, as principals and aiders

and abettors cheated or defrauded, or attempted to cheat or defraud Plaintiffs by redepositing

Plaintiffs' redeemed funds into the commodity pool account at PFG instead of returning such

funds to Plaintiffs.

38.     Plaintiffs' loss is a direct result of a violation of their trading authorization and

instructions by the Maxie Partners Entities and the Acuvest Defendants.  The Maxie Partners

Entities and the Acuvest Defendants violated the statutory provisions imposed by Section 4o and

4b of the Commodities Exchange Act, 17 U.S.C. §§ 6o, 6b, in that they cheated and defrauded Plaintiffs by acting deliberately or with careless disregard of their duties to Plaintiffs, and otherwise engaged in transactions, practices or courses of business that operated as a fraud or deceit upon Plaintiffs.

39.     Additionally, all trades executed in Maxie Partners L.P.'s PFG accounts after June 31, 2007 reflect unauthorized trading of Plaintiffs' capital accounts and the direct violation of Plaintiffs' instructions to redeem their capital accounts.  Plaintiffs relied upon Defendants' representations that Plaintiffs were going to receive their funds by the week of July 10-15, 2007 and their losses were caused by their reliance on such misrepresentations.  The Defendants were aware of Plaintiffs' valid notice to redeem their investments and deliberately defrauded Plaintiffs by re-investing their funds in a maximum risk options account contrary to their instructions.  The funds were put at risk so that the Defendants could continue to trade the account, but they were unable to turn a profit and instead lost the funds.

40.     To the extent that Plaintiffs had authorized Maxie Partners and Acuvest to trade in commodities using Plaintiffs' funds, the authorization was clearly withdrawn by virtue of Plaintiffs' redemption request that became effective June 30, 2007.

41.     The Acuvest Defendants knew that all trades with Plaintiffs' capital accounts after June 30, 2007 were unauthorized and contrary to Plaintiffs' instructions and therefore violated the statutory provisions imposed by Section 4o and 4b of the Commodities Exchange Act, 17 U.S.C. §§ 6o, 6b, in that they cheated and defrauded Plaintiffs by acting deliberately or with careless disregard of their duties to Plaintiffs, and otherwise engaged in transactions, practices or courses of business that operated as a fraud or deceit upon Plaintiffs.

42.     Pursuant to the Guaranteed Introducing Broker Agreement, defendant PFG is liable jointly and severally for Acuvest's violations of the CEA, as hereinabove alleged, and for Acuvest's liabilities thereunder.

## SECOND CAUSE OF ACTION
(Breach of Fiduciary Duty – Acuvest Defendants)

43.     Paragraphs 1 to 42 of the Complaint are incorporated as if stated fully herein.

44.     Acting as the general partner and investment advisor and commodities pool operator, the Maxie Partners Entities owed a fiduciary duty to Plaintiffs to act in Plaintiffs' interest and with due regard for the purposes and intent of Plaintiffs' investment in Maxie Partners L.P.   The Maxie Partners Entities violated their fiduciary duties when they abused Plaintiffs' trust, failed to honor Plaintiffs' requests with respect to their investment through Maxie Partners L.P., wrongfully withheld Plaintiffs funds, purportedly continued to invest and lose Plaintiffs' funds that had been formally withdrawn from the limited partnership, and which the Defendants and the Maxie Partners Entities had no authority to put at risk, and failed to fully disclose the status and disposition of Plaintiffs' funds.

45.     As the introducing broker and investment advisor, the Acuvest Defendants owed a fiduciary duty to Plaintiffs to act in Plaintiffs' interest and with due regard for the purposes and intent of Plaintiffs' investment with Defendants.   Each of the Acuvest Defendants breached that fiduciary duty and aided and abetted the Maxie Partners Entities' breach of fiduciary duty when they abused Plaintiffs' trust, failed to honor Plaintiffs' requests with respect to their investment through Maxie Partners L.P., wrongfully withheld Plaintiffs funds, purportedly continued to invest and lose Plaintiffs' funds that had been formally withdrawn from the limited partnership, and which the Defendants had no authority to put at risk, and failed to fully disclose the status and disposition of Plaintiffs' funds.

46.     As a consequence, Plaintiffs are entitled to damages as against Defendants in an amount to be determined at trial but believed to be not less than $4 million.

### THIRD CAUSE OF ACTION
(Guarantor Liability – PFG Only)

47.     Paragraphs 1 to 46 of the Complaint are incorporated as if stated fully herein.

48.     This Cause of Action is brought against PFG only for its guarantor liability.

49.     Pursuant to that certain Guarantee Agreement, defendant PFG is liable jointly and severally for Acuvest's violations of the CEA, as hereinabove alleged, and for Acuvest's liabilities thereunder.

50.     The Guarantee Agreement provided that PFG would guarantee Acuvest's obligations under the CEA during all times relevant to Plaintiffs' claims herein.  The Guarantee Agreement covered all "transactions involving . . . accounts of the IB entered into on or after the effective date" of the Guarantee Agreement.  The Maxie Partners account was opened during the term of the Guarantee Agreement and therefore any transactions involving the Maxie Partners account that violated the CEA gave rise to PFG's guarantor liability.

51.     PFG is equitably estopped from claiming that any purported termination of the Guarantee Agreement operated to relieve PFG of its guarantor liability with respect to unlawful transactions involving the Maxie Partners account at PFG.

52.     Plaintiffs relied on PFG's guarantee of Acuvest when they invested their funds in Maxie Partners at Acuvest's behest.  Plaintiffs also continued to let Maxie Partners and Acuvest engage in trading their funds in reliance on PFG's continued guarantee of Acuvest's compliance with the CEA.  If Plaintiffs had known of any purported termination of PFG's guarantee of Acuvest, Plaintiffs would have immediately demanded that all parties cease trading in the Maxie Partners account and that Plaintiffs' funds be immediately returned to them.

53.     FCMs such as PFG do not rely solely on their own sales force to generate brokerage business.  PFG used the Acuvest Defendants to originate new brokerage customers and solicit funds for commodities trading.  Plaintiffs would not have agreed to put their funds at risk by investing through a small trading advisor, such as Acuvest, unless Acuvest's obligations under the CEA were guaranteed by PFG, a larger financial institution.  PFG's conduct in guaranteeing Acuvest was intended to and did in fact induce Plaintiffs to invest their funds through Acuvest.

54.     Once Plaintiffs invested their funds through and at the behest of Acuvest, PFG knew that Plaintiffs would have immediately withdrawn their investments if the guarantee of Acuvest was terminated.  Upon information and belief, PFG knew that Plaintiffs and other investors believed that PFG had guaranteed Acuvest's compliance with the CEA.  PFG concealed the material fact that Acuvest could terminate the guarantee at any time without Plaintiffs' knowledge.  Had Plaintiffs known this, they would never have invested their funds through Acuvest.  PFG's conduct in concealing the material fact that they could If, after Plaintiffs invested, there was an effective termination of PFG's guarantee of Acuvest with respect to transactions in the Maxie Partners account (which Plaintiffs dispute), the concealment of that termination materially misled Plaintiffs and induced them to allow Acuvest to continue to trade their funds through the Maxie Partners account.  At the least, conscience and the duty of honest dealing precludes PFG from repudiating the guarantee of Acuvest that induced Plaintiffs to invest it funds though Acuvest.

## PRAYER

WHEREFORE, Plaintiffs request an Order and Judgment from the Court as follows:

1.     Awarding to Plaintiffs on their First, Second and Third Causes of Action damages as against all Defendants in an amount equal to the balance of Plaintiffs' respective capital

accounts as of June 30, 2007, less their pro rata share of the payments to them by the Maxie

Partners Entities, in an amount to be determined at trial but believed to be in excess of $4

million, together with prejudgment interest, and

      2.    Such other and further relief that the Court determines is just and proper.

Dated: February 15, 2011              GEKAS LAW LLP


                               By: /s/ Constantine John Gekas
                                   Constantine John Gekas
                                   John C. Gekas

OF COUNSEL:

Philip M. Smith (admitted *pro hac vice*)          11 S. LaSalle St., Suite 1700
Kate S. Woodall (admitted *pro hac vice*)        Chicago, IL 60603
PATTON BOGGS LLP                     (312) 726-4501
1185 Avenue of the Americas, 30th Floor      (312) 726-4505 (Fax)
New York, New York 10036              CJG@gekaslaw.com
(646) 557-5145
(646) 557-5101 (fax)                      *Attorneys for Plaintiffs*
pmsmith@pattonboggs.com

## CERTIFICATE OF SERVICE

I certify that on February 15, 2011, the foregoing document was filed electronically, was thereby served on, and is therefore available for viewing and downloading from the ECF system by counsel of record herein and all parties registered to receive notice via the Court's EM/ECF electronic system, as follows:

Harris L. Kay
Jeffrey M. Henderson
Henderson & Lyman
175 W. Jackson Boulevard
Suite 240
Chicago, IL 60604
(312) 986-6960
hkay@henderson-lyman.com
jhenderson@henderson-lyman.com

Laurence M. Landsman
Block & Landsman
33 North LaSalle Street
Suite 1400
Chicago, IL 60602
(312) 251-1144
larry@block-landsman.com

Brandon Scott Reif
Winget Spadafora & Schwartzberg LLP
1900 Avenue of the Stars
Suite 450
Los Angeles, CA 90067
reif.b@wssllp.com

Rebecca J. Wing
Peregrine Financial Group, Inc.
311 West Monroe Street
Suite 1300
Chicago, IL 60606
(312) 775-3464
rwing@pfgbest.com

 /s/ Kate S. Woodall_____
*Attorney for Plaintiffs*